UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-118 (JRT/LIB)

UNITED STATES OF AMERICA,

Plaintiff,

v.

JENNIFER MARIE STATELY,

Defendant.

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

Defendant Jennifer Stately was convicted at trial on five counts of first-degree murder and one count of arson for singularly unconscionable conduct: Ms. Stately brutally attacked and killed two of her young children. Ms. Stately did not dispute her actions; rather, she pursued the affirmative defense of insanity. The jury was unpersuaded. Standing convicted, Ms. Stately is subject to the mandatory sentence of life in prison.

## **THE OFFENSE CONDUCT**

Ms. Stately is an enrolled member of the Red Lake Band of Chippewa Indians who in March 2024 lived on the Red Lake Indian Reservation. On Friday, March 15, 2024, while home with her boys, Ms. Stately attacked her oldest son, Minor A, with a knife. She jabbed him in the arms, stomach, and back. She bludgeoned his face. And then she stabbed him in the chest, puncturing his lungs and killing him.

She also attacked her second son, Minor B. She slashed at him with the knife, causing numerous lacerations to his chest and hands, including severing the tops of two of his fingers. Those injuries, though no doubt excruciating for the young boy, were non-fatal. But then, with Minor A dead inside the home and Minor B by his side, suffering from his mother's knife attack, Ms. Stately doused the house with an ignitable liquid, set fire to the home, and fled with her youngest son. Smoke filled the home and suffocated Minor B, causing his death.

Ms. Stately was ultimately apprehended several hours later in Todd County—over 150 miles south of Red Lake. Officers stopped Ms. Stately's car, confirmed that she was alone with her third child, and took her into custody.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the

appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

## A. Sentencing Guidelines Calculation

To determine the appropriate advisory guidelines range, the Court must first resolve the defendant's outstanding objections to the offense level computation in the Presentence Investigation Report ("PSR"). Before the Court are objections on three topics: (1) acceptance of responsibility; (2) the multiple count adjustment; and (3) the statutory mandatory term of imprisonment. The government addresses each in turn.

### 1. Acceptance of Responsibility

Ms. Stately objects to the lack of any downward adjustment for acceptance of responsibility. According to Ms. Stately, the absence of any plea offer that contemplated a resolution short of a life sentence obviates the Sentencing Guidelines instruction that a downward adjustment does not apply to a defendant that puts the government to its burden at trial. That is incorrect.

The application notes for U.S.S.G. § 3E1.1 address this issue directly: "This adjustment is not intended to apply to a defendant who puts the government to its burden at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."

U.S.S.G. § 3E1.1, comment. n.2. The application notes recognize the "rare situations" in which a defendant demonstrates acceptance of responsibility despite exercising her constitutional right to a trial, but those are generally limited to cases in which the defendant "goes to trial to assert and preserve issues that do not relate to factual guilt." *Id.*

Prior to her conviction, Ms. Stately steadfastly maintained her position that she bore no culpability for the crimes committed. Although she never denied her involvement, Ms. Stately argued that she suffered from a mental illness that rendered her incapable of understanding the wrongfulness of her conduct, thereby requiring a verdict of not guilty. Ms. Stately vigorously pursued that defense at trial. Accordingly, Ms. Stately has throughout this case denied—and, indeed, continues to deny—an "essential factual element[] of guilt." *Id.* This is not one of the "rare situations" when a defendant went to trial simply to preserve an issue that "do[es] not relate to factual guilt." *Id.*

Moreover, the absence of a plea agreement does not change the calculus. Ms. Stately cites no case in which the absence of a plea offer deemed acceptable to the defense altered the application of § 3E1.1. Ms. Stately directs the Court to *United States v. Donnell*, Crim. No. 21-212 (JRT), but that case was resolved via plea and involved a key factual distinction: the instant case concerned the murder of children, *Donnell* did not. In *Donnell*, the parties entered a plea agreement whereby the defendant pled guilty to the lesser included offense of

second-degree murder, thereby eliding the mandatory life sentence. *Id.* at ECF No. 59. But as Ms. Stately acknowledges, because the instant case involves the murder of children, even if Ms. Stately had pled guilty to second-degree murder, she still would have been exposed to a life sentence. *See*, *e.g.*, *United States v. Waupoose*, 627 F. Supp. 2d 930, 935–36 (E.D. Wisc. 2008). Here, the only resolution that would have permitted a sentence short of life was a plea to counts of manslaughter. Such a resolution would have been wholly incompatible with the facts of the case.

Because Ms. Stately put the government to its burden at trial by offering an affirmative defense that would have negated an essential factual element of guilt, she is not entitled to a two-level reduction for acceptance of responsibility.

**2. Multiple Count Adjustment**

Ms. Stately also objects to the multiple count adjustment, arguing that all four murder counts and the arson count address the same behavior and involve the same victims. Not so.

Under U.S.S.G. § 3D1.2, counts should be grouped together if they involve "substantially the same harm." The Guidelines provide that to qualify as substantially the same harm, the counts must "involve the same victim and the same transaction." U.S.S.G. § 3D1.2(a). For this subsection, the singularity of the victim is essential: "Under subsection (a), counts are to be

grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction *involving the same victim*." U.S.S.G. § 3D1.2, comment. n.3 (emphasis added).

The instant case involves distinct harms perpetrated against distinct victims. Counts 1 and 3 concern the violent assault and murder of Minor A. Counts 2, 4, and 5 concern the violent assault and arson resulting in the murder of Minor B. Accordingly, Probation separately grouped the counts concerning the premeditated murder of Minor A (Counts 1 and 3) and the counts concerning the premeditated murder of Minor B (Counts 2, 4, and 5). U.S.S.G. § 3D1.2(a), (b). That application of the Guidelines grouping provisions is correct and should be adopted by this Court.

**3. Statutory Mandatory Term of Imprisonment**

Lastly, Ms. Stately objects to the mandatory life sentences required under 18 U.S.C. § 1111(b). According to Ms. Stately, the mandatory, unqualified directives of § 1111(b) as to first-degree murder are superseded by the more broadly applicable, if narrowly defined, provisions of § 3559, which, in turn, are restricted by § 3593 and rendered a nullity by § 3553(a). None of that is correct.

First, because Ms. Stately was convicted of two counts of first-degree, premeditated murder and three counts of first-degree, felony murder, the

relevant statutory authority is § 1111—the separate directives of § 3559 have no bearing on either the present legal inquiry or the sentencing determination.

Section 1111 defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). Every murder "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being" is "murder in the first degree." *Id.* Murders committed in the perpetration of "child abuse" or "arson" are likewise categorized as "murder in the first degree." *Id.* Any other murder is murder in the second degree. *Id.*

If a criminal defendant is convicted of first-degree murder, the sentencing judge has only two options: the death penalty or life imprisonment. *See* 18 U.S.C. § 1111(b). But when, as here, jurisdiction arises because the crime occurred on tribal land and the tribal government has not explicitly authorized the use of capital punishment, any conviction for first-degree murder results in a mandatory life sentence. *See* 18 U.S.C. § 3598. Conversely, second-degree murder generally carries no mandatory sentence: "Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life." 18 U.S.C. § 1111(b). However, that general directive is qualified by 18 U.S.C. § 3559(d), which provides that when an offense (a) constitutes a serious violent felony against a child under 14 years old, (b) the child victim died as a result of the offense, and (c) the offense involved the intentional killing of the victim or the intentional infliction of serious bodily injury that

resulted in the death of the victim, the defendant shall be sentenced to imprisonment for life. *See* 18 U.S.C. § 3559(d)(1); *see also Waupoose*, 627 F. Supp. 2d at 933–35 (holding that under § 3559, a defendant who pled guilty to second-degree murder of an eight-week-old victim was subject to a mandatory life sentence).

Here, Ms. Stately was charged with five counts of first-degree murder under 18 U.S.C. § 1111. *See* ECF No. 79 (Second Superseding Indictment), Counts 1–5. Because the government recognized that at trial Ms. Stately was entitled to an instruction on the lesser-included offenses of second-degree murder, *see United States v. Dodd*, 473 F.3d 873, 876 (2007) (articulating legal standard for lesser-included offense instruction), the Second Superseding Indictment included the statutory citation to § 3559, thereby confirming the government's understanding that even if Ms. Stately was convicted of only the lesser-included offenses, she would still be subject to mandatory life sentences. *See Waupoose*, 627 F. Supp. 2d at 933–35.

At trial, the jury was given separate instructions on first- and second-degree murder. *See* ECF No. 126 at 24–27. The verdict form explicitly authorized the jury, if it were to acquit Ms. Stately of first-degree, premeditated murder as to either Minor A or Minor B, to consider holding Ms. Stately accountable for only the lesser-included offenses of second-degree murder. *See* ECF No. 128 at 1–4. The jury never reached the inquiry of

lesser-included offenses. *Id.* Instead, the jury found Ms. Stately guilty of first-degree, premeditated murder as to Minor A (Count 1), and guilty of first-degree, premeditated murder as to Minor B (Count 2):

> **COUNT 1**
> (Premeditated Murder as to Minor A)
> **Instruction 20**
>
> **Question 1A:** We, the Jury, unanimously find the defendant, Jennifer Marie Stately,
>
> __X__ GUILTY
>
> _____ NOT GUILTY
>
> _____ NOT GUILTY BY REASON OF INSANITY
>
> of the crime of first-degree, premeditated murder as to Minor A, as charged in **COUNT 1** of the Indictment.

> **COUNT 2**
> (Premeditated Murder as to Minor B)
> **Instruction 21**
>
> **Question 2A:** We, the Jury, unanimously find the defendant, Jennifer Marie Stately,
>
> __X__ GUILTY
>
> _____ NOT GUILTY
>
> _____ NOT GUILTY BY REASON OF INSANITY
>
> of the crime of first-degree, premeditated murder as to Minor B, as charged in **COUNT 2** of the Indictment.

*Id.* at 1, 3.

Because the jury found Ms. Stately guilty on all five counts of first-degree murder, the mandatory life sentences required by § 1111(b) apply. The analysis ends there.

Second, even if the Court were to apply § 3559 as part of the instant sentencing analysis, because the offenses of conviction are not death eligible, the requirement under § 3593 of a special hearing and corresponding separate findings does not apply.

Section 3593 details the procedural requirements the government must follow in cases arising out of § 3591 (involving the intentional killing of a minor victim or intentional infliction of serious bodily injury that results in the death of the victim) for which "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under the chapter." 18 U.S.C. § 3593. Those requirements include explicit notice of its intent to seek the death penalty and a detailed description of the aggravating factors it believes support a death sentence. 18 U.S.C. § 3593(a). If such notice is provided, then "the judge who presided at the trial or before whom the guilty plea was entered" must conduct a hearing that involves special findings as to the noticed aggravating factors. 18 U.S.C. § 3593(b)–(d).

Ms. Stately argues that for the mandatory life sentence under § 3559 to be imposed, the Court would have needed to preside over the special hearing detailed in § 3593(b), with the jury making special findings on certain

aggravating factors as detailed in § 3593(d). Not so. As § 3593 makes plain, the procedural requirements apply only to circumstances involving death-eligible cases in which the government explicitly notices its intent to seek the death penalty. *See* 18 U.S.C. § 3593(a). Here, neither element applies. Because the Red Lake Band of Ojibwe has not explicitly authorized the use of the death penalty in cases brought by the United States, the death penalty is not an available sanction. And, as such, the government never noticed any intent to seek the death penalty.

Because the case involves no question surrounding the death penalty, procedural requirements specific to death penalty cases do not apply. *See Waupoose*, 627 F. Supp. 2d at 933–35 (no reference to procedural requirements of § 3593 in case involving mandatory life sentence under § 3559 for second-degree murder of a minor under the age of 14).

Third, the general admonition under 18 U.S.C. § 3553(a) that a sentence must be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing does not obviate the provisions of § 1111 and § 3559 mandating life sentences for the specified crimes. Ms. Stately's assertion to the contrary is without merit.

For these reasons, Ms. Stately's objection to the mandatory life sentences should be overruled.

With an adjusted offense level of 43 and a criminal history category of I, the advisory guidelines range is life in prison. Further, each of Counts 1 through 5 carries a statutory mandatory sentence of life in prison.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

The nature and circumstances of the offense support the statutorily required sentence of life in prison. Ms. Stately committed a crime of shocking, almost unfathomable dimensions. She brutally attacked the people who trusted her most in the whole world, people who looked to her for comfort and protection, people with no ability to protect themselves and no capacity to comprehend the horror being inflicted upon them: her own children. After brutally attacking and murdering her eldest son, she struck and slashed at her second son. With her second son cowering in the house, hiding from his own mother in a room with his older brother dead on the floor, Ms. Stately doused

the home with an ignitable liquid and set it ablaze. The second son died in the house from carbon monoxide poisoning—he choked to death on the smoke.

There is no crime more serious or heinous. A sentence of life in prison is one of the two most severe sanctions available in our system of justice. It is reserved for crimes like these.

### 2. History and Characteristics of the Defendant

Ms. Stately is an extremely troubled woman with a terribly troubling past. To the extent one hopes to find understanding or explanation for her actions, there is much to glean from her personal history. No past, however, can justify or meaningfully mitigate her conduct here.

### 3. Deterrence, Respect for the Law, and Protecting the Public

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). Just punishment and the need to promote respect for the law and protect the public support the statutorily mandated sentence.

## CONCLUSION

Ms. Stately's acts shock the conscience and shatter the soul. By law, she is subject to a mandatory sentence of life in prison. It's the sentence the Court is required to issue. It's the sentence the crimes deserve.

Dated: October 23, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/ Garrett S. Fields*
GARRETT S. FIELDS
Assistant U.S. Attorney